**Jay L. RAPPOPORT, Plaintiff,**

v.

**STEVEN SPIELBERG, INC., et al., Defendants.**

**Civil Action No. 97–5742 (AJL).**

United States District Court, D. New Jersey.

June 26, 1998.

Jay L. Rappoport, Teaneck, NJ, pro se plaintiff.

David D'Aloia, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, for Steven Spielberg, Amblin Entertainment, Universal City Studios Inc., Warner Bros., Time Warner Inc., Turner Pictures, Turner Broadcasting System, Inc., Hanna–Barbera, Inc., The News Corporation Limited, Twentieth Century Fox Film Corp., Paramount Pictures Corp., Viacom International Inc., Industrial Light and Magic, Nabisco, Inc., Kellogg USA, Inc., DowBrands Inc., Pizza Hut, Inc., Jeffrey Montgomery, The Harvey Entertainment Company, Creative Artists Agency, and Washington Post Company.

John T. Wolak, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, for Portland Cable Access, Deborah M. Luppold, Melinda McCrossen, Ellery S. Nelson and George R. Slanina, Jr.

Emil S. Cuccio, Cuccio and Cuccio, Hackensack, NJ, for Tele–Communications, Inc.

William J. Kearns, Jr., Kearns, Vassallo, Guest & Kearns, Willingboro, NJ, for City of Portland.

Anthony J. Marchetta, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for The Coca–Cola Company.

Joseph B. Lerch, Edison, NJ, for Tropicana Products, Inc.

Brian Brokate, Gibney, Anthony & Flaherty, New York City, for Big Feats Entertainment.

Louis M. DeStefano, Carpenter, Bennett & Morrissey, Newark, NJ, for Star Enterprise and Texaco, Inc.

Bruce S. Rosen, McCusker, Anselmi, Rosen & Carvelli, P.C., Chatham, NJ, for CBS Broadcasting Inc. and Andrew Hill.

## OPINION

LECHNER, District Judge.

This is an action brought by *pro se* plaintiff, Jay L. Rappoport, ("Rappaport") against defendants, Steven Spielberg ("Spielberg"), Amblin Entertainment ("Amblin"), Michael

Ovitz ("Ovitz"), Creative Artists Agency ("CAA"), Industrial Light and Magic ("ILM"), Universal City Studios, Inc. ("Universal"),[1] Jeffrey Montgomery ("Montgomery"), Harvey Entertainment ("Harvey"), Warner Brothers ("Warner Bros."), Time Warner, Inc. ("Time Warner"), Turner Pictures Worldwide, Inc. ("Turner Pictures"), Turner Broadcasting System, Inc. ("TBS"), Hanna–Barbera, Inc. ("Hanna–Barbera"), David Kirschner ("Kirschner"), Maurice Hunt ("Hunt"), Tele–Communications Inc. ("TCI"), The News Corporation Limited (the "News Corp."), Twentieth Century Fox Film Corporation ("Fox"), Pizza Hut, Inc. ("Pizza Hut"), Nabisco, Inc., ("Nabisco"), Star Enterprise, Inc. ("Star"), ("Texaco"),[2] DowBrands, Inc. ("Dow"), Tropicana Products, Inc. ("Tropicana"), Kellogg USA, Inc. ("Kellogg"), The Washington Post Company (the "Washington Post"), Viacom International, Inc. ("Viacom"),[3] Paramount Pictures Corporation ("Paramount Pictures"), Paramount Communications ("Paramount Communications"), Paramount Studios ("Paramount Studios"),[4] The Coca–Cola Company ("Coca–Cola"), Big Feats Entertainment, L.P. ("Big Feats"), CBS Broadcasting, Inc. ("CBS"), Andrew Hill ("Hill"), the City of Portland (Oregon) (the "City of Portland"), Portland Cable Access ("Portland Cable"), Corporation for Public Broadcasting ("CPB"), Channel 13 (New York City) ("EBC"), Elaine Weinberg ("Weinberg"), Debbie Luppold ("Luppold"), Melinda McCrossen ("McCrossen"), Phyllis Cole ("Cole"), Ellery Nelson ("Nelson"), Preston Foster ("Foster"), George Slanina ("Slanina") and Sandi St. John ("St.John") (collectively, the "Defendants").

The Amended Complaint asserts claims for copyright infringement, theft of trade secrets, breach of implied contract, false designation of origin pursuant to 15 U.S.C. § 1125(a), restraint of trade pursuant to 15 U.S.C. § 1 and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). *See* Amended Complaint at ¶ 5. Jurisdiction and venue are asserted in the Amended Complaint pursuant to 28 U.S.C. 1338(a) and 1400(a), 15 U.S.C. §§ 1125(a), 15(a) and 18 U.S.C. 1965(a), (b). *See id.*

Rappoport contends his "work taken by the [D]efendants was the basis for, and has been incorporated into some of the most commercially successful and creatively important films, television series, special effects work, and technological innovations of the decade." *Id.* at ¶ 8. The thirty page, 221 paragraph Amended Complaint is far from clear. It does not contain a short and plain statement of the claims upon which Rappoport seeks relief. *See* Fed.R.Civ.Pro. 8(a). Rappoport does make clear he has not been recognized for his work and seeks "accurate attribution for his work and compensatory and punitive damages to be determined at trial." *Id.* at ¶¶ 215–221.

Currently pending are the following motions:

1. In the amended complaint (the "Amended Complaint"), Universal is referred to occasionally as "MCA" or "MCA/Universal."

2. Star is listed as a defendant in the caption of the Amended Complaint but is not listed as a defendant in the "Parties" section of the Amended Complaint. *See* Amended Complaint. Texaco, on the other hand, is not listed as a defendant in the caption of the Amended Complaint but is listed as a party in the "Parties" section of the Amended Complaint. *See* Amended Complaint. A dispute has arisen between Rappoport and counsel for Star and Texaco whether Texaco has been dismissed from the action. In a recent submission, Rappoport contends he has causes of action against both Star and Texaco. *See* 12 June 1998 letter from Rappoport (the "Rappoport 12 June 1998 Letter").

3. Viacom is listed as a defendant in the caption of the Amended Complaint but is not listed as a defendant in the "Parties" section of the Amended Complaint. Nevertheless, Viacom will be considered a named defendant; it has appeared in the action and has moved to have the claims asserted against it transferred.

4. Paramount Pictures is listed as a defendant in the caption of the Amended Complaint but is not listed as a defendant in the "Parties" section, of the Amended Complaint. On the other hand, Paramount Communications and Paramount Studios are listed as defendants in the "Parties" section of the Amended Complaint but are not listed as defendants in the caption of the Amended Complaint. Paramount Pictures, Paramount Communications and Paramount Studios will be considered named defendants because they have appeared in the action. They will be collectively referred to as the "Paramount Defendants."

*Motions to Transfer*

1. a motion by Rappoport to transfer (the "Rappoport Motion to Transfer") [5] the action to the United States District Court for the District of Oregon (the "District of Oregon");

2. a motion by the "Movie Defendants" [6] to transfer (the "Movie Defendants Motion to Transfer") [7] the action to the United States District Court for the Southern District of New York (the "Southern District of New York");

5. In support of the Rappoport Motion to Transfer, Rappoport submitted: Memorandum of Law in Support of Plaintiff's Motion to Transfer (the "Rappoport Moving Brief"); Memorandum of Law in Answer to Defendant's Opposition to Transfer, and in Further Support of Plaintiff's Motion to Transfer (the "Rappoport Reply Brief"); and the Rappoport 12 June 1998 Letter.

6. The "Movie Defendants" is a collective term used to identify the following defendants: Amblin, Universal, Warner Bros., Time Warner, Turner Pictures, TBS, the News Corp., Fox, the Paramount Defendants, Viacom, ILM, Nabisco, Dow, Pizza Hut, CAA, and the Washington Post.

Because the Movie Defendants, Spielberg, Harvey, Hanna–Barbera and Montgomery are represented by the same counsel and filed joint briefs, they are collectively referred to as the "Film Defendants." It appears Kellogg is also represented by the same counsel. Because it appears Kellogg did not join in any of the motions, however, Kellogg will not be considered one of the Film Defendants.

7. In support of the Movie Defendants Motion to Transfer and in opposition to the Rappoport Motion to Transfer, the Movie Defendants submitted: Memorandum of Law in Support of Motion to Dismiss the Action Pursuant to Fed.R.Civ.P. 12(b)(2) and (5) and to Transfer the Case to the Southern District of New Jersey [sic] Pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404(a) (the "Film Defendants Moving Brief"); Certification of Richard M. Hirsch (the "Hirsch Certif."); Certification of William Wales (the "Wales Certif."); Certification of Mark H. Epstein (the "Epstein Certif."); Certification of Randall F. Kender (the "Kender Certif."); Certification of Steven H. Hartman (the "Hartman Certif."); Certification of Kevin S. Marks on behalf of Amblin (the "Marks Certif."); Certification of Paul D. Springer (the "Springer Certif."); Certification of Melanie Morgan (the "Morgan Certif."); Certification of Michael J. Biber (the "Biber Certif."); Certification of Diana Daniels (the "Daniels Certif."); Certification of Mark A. Wooster (the "Wooster Certif."); Certification of Tom J. Ferber (the "Ferber Certif."); and Memorandum of Law in Opposition to Plaintiff's Motion to Transfer and in Further Support. of Defendants' Motion to Dismiss the Action Pursuant .

3. a motion by CBS and Hill [8] to transfer (the "CBS/Hill Motion to Transfer") [9] the action to the Southern District of New York;

4. a motion by Coca–Cola to transfer (the "Coca–Cola Motion to Transfer") [10] the action to the Southern District of New York;

5. a "motion" by Tropicana to transfer (the "Tropicana Motion to Transfer") [11] the action to the Southern District of New York;

to Fed.R.Civ.P. 12(b)(2) and (5) and to Transfer the Case to the Southern District of New York Pursuant to Fed.R.Civ.P. 12(b)(3) and 28 U.S.C. § 1404(a) (the "Film Defendants Reply Brief").

8. Hill did not file a separate motion to transfer, but he appears to have joined in the motion to transfer filed by CBS. *See* CBS letter-brief, dated 28 May 1998, (the "CBS Reply Brief")

9. In support of the CBS/Hill Motion to Transfer and in opposition to the Rappoport Motion to Transfer, CBS submitted: letter-brief, dated 13 April 1998, (the "CBS Moving Brief"); and the CBS Reply Brief. The CBS Moving Brief and the CBS Reply Brief adopt and rely upon the Film Defendants Moving Brief and the Film Defendants Reply Brief. *See* CBS Moving Brief; CBS Reply Brief.

10. In support of the Coca–Cola Motion to Transfer and in opposition to the Rappoport Motion to Transfer, Coca–Cola submitted: letter-brief, dated 13 April 1998, (the "Coca–Cola Moving Brief"); and letter-brief, dated 28 May 1998, (the "Coca–Cola Reply Brief"). The Coca–Cola Moving Brief and the Coca–Cola Reply Brief adopt and rely upon the Film Defendants Moving Brief and the Film Defendants Reply Brief. *See* Coca–Cola Moving Brief; Coca–Cola Reply Brief.

11. Tropicana did not file a formal motion to transfer and/or dismiss the action. In the Defendant Tropicana's Memorandum of Law in Opposition to Plaintiff's Motion to Transfer Venue (the "Tropicana Opposition Brief"), however, Tropicana stated that, if transfer of the action was appropriate, the action should be transferred to the Southern District of New York. *See* Tropicana Opposition Brief at 5. Accordingly, the Tropicana Opposition Brief will be considered a motion to transfer.

In support of the Tropicana Motion to Transfer a in opposition to the Rappoport Motion to Transfer, Tropicana submitted: the Tropicana Opposition Brief. The Tropicana Opposition Brief adopts and relies upon the Film Defendants Moving Brief and the Film Defendants Reply Brief. *See* Tropicana Opposition Brief at 5.

6. a motion by Star and Texaco[12] to transfer (the "Star/Texaco Motion to Transfer")[13] the action to the Northern District of Georgia;

7. a motion by Big Feats to transfer (the "Big Feats Motion to Transfer")[14] the action to the United States District Court for the Northern District of Texas (the "Northern District of Texas");

### Motions to Dismiss or Transfer

8. Motions by TCI to dismiss the action for insufficiency of process and for lack of personal jurisdiction (the "TCI Motion to Dismiss") or, in the alternative, to transfer (the "TCI Motion to Transfer") the action to the Southern District of New York (collectively, the "TCI Motion to Dismiss/Transfer");[15]

9. a motion by the "PCA Defendants"[16] to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the District of Oregon (the "PCA Defendants Motion to Dismiss/Transfer");[17]

10. a motion by the City of Portland to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the District of Oregon (the "City of Portland Motion to Dismiss/Trans-

---

**12.** Texaco did not file a formal motion to transfer. In a letter, dated 17 June 1998, (the "Texaco 17 June 1998 Letter") however, Texaco appears to join in the motion to transfer filed by Star and states it is subject to personal jurisdiction in the United States District Court for the Northern District of Georgia (the "Northern District of Georgia").

**13.** In support of the Star/Texaco Motion to Transfer and in opposition to the Rappoport Motion to Transfer, Star and Texaco submitted: Memorandum of Law in Support of Defendant Star Enterprise's Motion to Transfer (the "Star Moving Brief"); the Affidavit of Carrie Lang in Support of Defendant Star Enterprise's Motion to Transfer (the "Lang Aff."); Memorandum of Law of Defendant Star Enterprise In Opposition to Plaintiff's Motion to Transfer Venue with Respect to Star Enterprise (the "Star Opposition Brief"); letter-brief, dated 8 June 1998, (the "Star Reply Brief"); and the Texaco 17 June 1998 Letter.

**14.** In support of the Big Feats Motion to Transfer and in opposition to the Rappoport Motion to Transfer, Big Feats submitted: Memorandum of Law in Support of Big Feats Entertainment's Motion for Change of Venue (the "Big Feats Moving Brief"); Affidavit of Joyce D. Slocum in Further Support of Defendant Big Feats' Motion to Transfer to Texas and in Opposition to Plaintiff's Motion to Transfer to Oregon (the "Slocum Aff."); Certification of Jason D. Advocate in Further Support of Defendant Big Feats' Motion to Transfer to Texas and in Opposition to Plaintiff's Motion to Transfer to Oregon (the "Advocate Certif."); and Memorandum of Law in Support of Big Feats Entertainment's Motion for Change of Venue (the "Big Feats Reply Brief").

The Big Feats Moving Brief refers to an affidavit of Richard Duffield. *See* Big Feats Moving Brief at 3. It appears from the Advocate Certif. and the Slocum Aff., however, that no affidavit was in fact submitted by Mr. Duffield. *See* Slocum Aff. at ¶ 9; Advocate Certif. at ¶ 6.

**15.** TCI filed two separate motions—one to dismiss the action and the other to transfer the action. The motions will be treated as one motion for purposes of this opinion and will be referred to as the "TCI Motion to Dismiss/Transfer."

In Support of the TCI Motion to Dismiss, TCI submitted: Memorandum of Law in Support of Tele–Communications, Inc.'s Motion to Dismiss Plaintiff's Complaint; Declaration of Kathleen Grady in Support of Tele–Communications, Inc.'s Motion to Dismiss Plaintiff's Complaint; and Declaration of Mary M. McChesney in Support of Tele–Communications, Inc.'s Motion to Dismiss Plaintiff's Complaint.

In support of the TCI Motion to Transfer and in opposition to the Rappoport Motion to Transfer, TCI submitted: Notice of Joinder and Joinder of Defendant Tele–Communications, Inc. in Defendant's Opposition to Plaintiff's Motion to Transfer Venue to the U.S. District Court of Oregon, and in Support of Motion to Transfer Venue to the U.S. District Court of the Southern District of New York (the "TCI Moving Brief").

**16.** The "PCA Defendants" is a collective term used to identify the following defendants: Portland Cable, Luppold, McCrossen, Nelson and Slanina.

**17.** In support of the PCA Defendants Motion to Dismiss/Transfer and in opposition to the Rappoport Motion to Transfer, the PCA Defendants submitted: Memorandum in Support of PCA Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1404 (the "PCA Defendants Moving Brief"); Affidavit of Ellery S. Nelson (the "Nelson Aff."); Affidavit of Deborah M. Luppold (the "Luppold Aff ."); Affidavit of Melinda McCrossen (the "McCrossen Aff."); Affidavit of George R. Slanina, Jr. (the "Slanina Aff."); Affidavit of Robert Skelton (the "Skelton Aff."); and letter-brief, dated 4 June 1998, (the "PCA Defendants Reply Brief").

fer"); [18]

### Motions to Dismiss

11. a motion by Spielberg to dismiss the action for insufficiency of process and for lack of personal jurisdiction (the "Spielberg Motion to Dismiss"); [19]

12. a motion by Montgomery to dismiss the action for lack of personal jurisdiction (the "Montgomery Motion to Dismiss"); [20]

13. a motion by Harvey to dismiss the action for lack of personal jurisdiction (the "Harvey Motion to Dismiss"); [21]

14. a motion by Hanna–Barbera to dismiss the action for lack of personal jurisdiction (the "Hanna–Barbera Motion to Dismiss"). [22]

Excluding the Rappoport Motion to Transfer, these motions will be collectively referred to as the "Post–Amendment Motions."

For the reasons set forth below:

1. the Rappoport Motion to Transfer is granted in part and denied in part;

2. the Movie Defendants Motion to Transfer is granted; the claims against the Movie Defendants are severed and transferred to the Southern District of New York;

3. the CBS/Hill Motion to Transfer is granted; the claims against CBS and Hill are severed and transferred to the Southern District of New York;

4. the Coca–Cola Motion to Transfer is granted; the claims against Coca–Cola are severed and transferred to the Southern District of New York;

5. the Tropicana Motion to Transfer is granted; the claims against Tropicana are severed and transferred to the Southern District of New York;

6. the Star/Texaco Motion to Transfer is granted; the claims against Star and Texaco are severed and transferred to the Northern District of Georgia;

7. the Big Feats Motion to Transfer is granted; the claims against Big Feats are severed and transferred to the Northern District of Texas;

8. the TCI Motion to Dismiss/Transfer is granted in part and denied in part; the claims against TCI are severed and transferred to the Southern District of New York;

9. the PCA Defendants Motion to Dismiss/Transfer is granted in part and denied in part; the claims against the PCA Defendants are severed and transferred to the District of Oregon;

10. the City of Portland Motion to Dismiss/Transfer is granted in part and denied in part; the claims against the City of Portland are severed and transferred to the District of Oregon;

11. the Spielberg Motion to Dismiss is granted; the claims against Spielberg are dismissed without prejudice;

12. the Montgomery Motion to Dismiss is granted; the claims against Montgomery are dismissed without prejudice;

13. the Harvey Motion to Dismiss is granted; the claims against Harvey are dismissed without prejudice;

---

18. In support of the City of Portland Motion to Dismiss/Transfer and in opposition to the Rappoport Motion to Transfer, the City of Portland submitted: Memorandum of Law in Support of City of Portland's Motion to Dismiss (the "City of Portland Moving Brief"); Affidavit of David C. Olsen (the "Olsen Aff."); and letter-brief, dated 2 June 1998, (the "City of Portland Reply Brief").

19. In support of the Spielberg Motion to Dismiss, Spielberg submitted: the Certification of Kevin S. Marks on behalf of Spielberg (the "Marks Certif. II"); the Ferber Certif.; and the Film Defendants Moving Brief and the Film Defendants Reply Brief.

20. In support of the Montgomery Motion to Dismiss, Montgomery submitted: the Certification of Jeffrey Montgomery (the "Montgomery Cer-

tif."); the Ferber Certif.; and the Film Defendants Moving Brief and the Film Defendants Reply Brief.

21. In support of the Harvey Motion to Dismiss, Harvey submitted: Certification of Michael Hope (the "Hope Certif."); the Ferber Certif.; and the Film Defendants Moving Brief and the Film Defendants Reply Brief.

22. In support of the Hanna–Barbera Motion to Dismiss, Hanna–Barbera submitted: the Certification of Marrianne Magnuson–Carson (the "Magnuson–Carson Certif."); the Ferber Certif.; and the Film Defendants Moving Brief and the Film Defendants Reply Brief.

14. the Hanna–Barbera Motion to Dismiss is granted; the claims against Hanna–Barbera are dismissed without prejudice; and

15. the claims against Ovitz, Kirschner and Kellogg are severed and transferred to the District of Oregon.

In summary, the claims against Amblin, Universal, Warner Bros., Time Warner, Turner Pictures, TBS, the News Corp., Fox, Paramount, Viacom, ILM, Nabisco, Dow, Pizza Hut, CAA, the Washington Post Company, CBS, Hill, Coca–Cola, Tropicana and TCI are transferred to the Southern District of New York. The claims against Star and Texaco are severed and transferred to the Northern District of Georgia. The claims against Big Feats are severed and transferred to the Northern District of Texas. The claims against Portland Cable, Luppold, McCrossen, Nelson, Slanina, the City of Portland, Ovitz, Kirschner and Kellogg are transferred to the District of Oregon. The claims against Spielberg, Montgomery, Harvey and Hanna–Barbera are dismissed without prejudice.

*Background*

### A. *Procedural History*

On 21 November 1997, Rappoport filed the thirty page, single-spaced complaint (the "Complaint") that named as defendants more than forty individuals and entities. *See* Complaint. Upon filing the Complaint, Rappoport paid the required filing fee.

On 16 January 1998, Rappoport filed an application to proceed *in forma pauperis* (the "Application"). By order, dated 22 January 1998, (the "22 January 1998 Order") the Application was denied. *See* 22 January 1998 Order.

On 20 January 1998, Rappoport filed a request for appointment of counsel (the "Request for Counsel"). *See* Request for Counsel. By order, dated 30 January 1998, (the "30 January 1998 Order") the Request for Counsel was denied by Magistrate Judge Dennis M. Cavanaugh ("Magistrate Judge Cavanaugh"). *See* 30 January 1998 Order.

On 17 February 1998, Universal, Warner Bros., Time Warner, Turner Pictures, TBS,

the Paramount Defendants and Viacom filed a motion to compel Rappoport to amend the Complaint (the "Motion Compelling Amendment of the Complaint"). On 2 March 1998, TCI filed a Notice of Joinder in the Motion Compelling the Amendment of the Complaint. Several other motions were filed by the Defendants seeking the dismissal of the Complaint for, among other things, lack of personal jurisdiction, insufficient service of process and failure to state a claim (collectively, the "Pre–Amendment Motions to Dismiss the Complaint").

By order, dated 2 March 1998, (the "2 March 1998 Order") the Motion Compelling Amendment of the Complaint was granted by Magistrate Judge Cavanaugh. Rappoport was directed to file an amended complaint within fifteen days of filing the 2 March 1998 Order. *See* 2 March 1998 Order.

By order, dated 4 March 1998, (the "4 March 1998 Order") EBC was voluntarily dismissed from the action. *See* 4 March 1998 Order.

On 6 March 1998, a hearing (the "6 March 1998 Hearing") was held before Magistrate Judge Cavanaugh. At the 6 March 1998 Hearing, Magistrate Judge Cavanaugh denied, without prejudice, the Pre–Amendment Motions to Dismiss the Complaint. *See* Transcript of 6 March 1998 Hearing at 5. Magistrate Judge Cavanaugh advised the Defendants that motions concerning lack of jurisdiction, lack of service of process, improper venue and forum non conveniens would be entertained before any other motion would be considered. *See* Transcript of 6 March 1998 Hearing at 5.

By order, dated 9 March 1998, (the "9 March 1998 Order") CPB was voluntarily dismissed from the action. *See* 9 March 1998 Order. By order, dated 10 March 1998, (the "10 March 1998 Order") Weinberg was voluntarily dismissed from the action. *See* 10 March 1998 Order.

On 16 March 1998, Rappoport filed the Amended Complaint. *See* Amended Complaint. The Post–Amendment Motions were then filed. Rappoport did not submit opposition, as such, to the Post–Amendment Motions. Instead, he filed the Rappoport Mo-

tion to Transfer the action to the District of Oregon. In the Rappoport Moving Brief, Rappoport argues in favor of the Rappoport Motion to Transfer and in opposition to the Post–Amendment Motions.

By letter, dated 21 April 1998, (the "Rappoport 21 April 1998 Letter"), Rappoport stated he has been unable to serve Hunt, Foster, Cole and St. John. He also stated that because the inclusion of these individuals as defendants "is not strictly necessary to achieving a fair resolution to the dispute, [he] is willing to waive his claims against" them. *See* Rappoport 21 April 1998 Letter. By order, dated 10 June 1998, Hunt, Foster, Cole and St. John were dismissed from the action, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and pursuant to the Rappoport 21 April 1998 Letter. *See* 10 June 1998 Order; Rappoport 21 April 1998 Letter.

### B. *Facts*

Rappoport is currently a citizen and resident of the State of New Jersey. *See* Amended Complaint ¶ 1. He is a self-professed "aspiring writer and film-maker." *See id.*

The Amended Complaint pleads five claims, denominated as copyright infringement, breach of implied contract, false designation of origin, restraint of trade and RICO. *See id.* at ¶ 5. Each claim is premised on conduct of the Defendants to misappropriate the "intellectual property" of Rappoport through alleged acts of "industrial espionage," "electronic surveillance" and theft of confidential materials. *See id.* at ¶¶ 6–7.

In most instances, the Amended Complaint fails to designate which purported claims are directed at particular defendants. *See* Amended Complaint. In some instances, the allegations which are asserted against certain defendants are too vague to adequately state a claim. For example, Spielberg, Amblin, Ovitz, CAA, ILM, Universal, News Corp., TCI, Time Warner, Turner Pictures and the Paramount Defendants are described in the Amended Complaint as "Primary Motivating

Parties." *See id.* at ¶ 26. Montgomery, Harvey, Kirschner and Hanna–Barbera, on the other hand, are vaguely described as "Secondary Conspirators." *See id.* at ¶ 27. To the extent possible, the various claims as to each of the Defendants are set forth below.

Rappoport alleges that in September 1991, while he resided in New Jersey, he made a submission to a News Corp. executive, Rafael Pastor ("Pastor"),[23] consisting of a short synopsis of a pilot episode for a proposed television series entitled "Portland Stories" and a "partial shooting plan" for the first episode. *See id.* at ¶¶ 2–3, 28, 32. The submission appears to have been sent to Pastor in New York. Rappoport contends he did not submit the synopsis to any other party. *See id.* at ¶ 36. The submission by Rappoport also included two allegedly novel special effects for use in the story. *See id.* at ¶ 32. Rappoport alleges Pastor was initially enthusiastic about his work and assured him it would be treated as confidential. *See id.* at ¶¶ 29, 32. Rappoport asserts, however, that Pastor later indicated he was not interested in the work and suggested Rappoport seek other avenues to produce his work. *See id.* at ¶ 33.

After concluding Pastor was not interested in pursuing his submission, Rappoport decided to produce his work on his own at the facilities of Portland Cable in Portland, Oregon, which he did during the summer of 1992. *See id.* at ¶ 37.

The Amended Complaint alleges that while Rappoport was working at Portland Cable, his production "was the subject of an intensive industrial espionage organized and carried out by the [D]efendants." *Id.* at ¶ 41. Allegedly, Pastor had passed on the submission of Rappoport to others in the industry. *See id.* It is alleged that the "industrial espionage" included "the placement of Jeffrey Montgomery, the president of Harvey Entertainment, as an industrial spy" at Portland Cable, who facilitated the misappropriation of Plaintiff's story concepts and "innova-

**23.** Although Pastor appears to be one of the central figures in the alleged misappropriation of the work of Rappoport, he is not named as a

defendant in the Amended Complaint. *See* Amended Complaint.

tive effects techniques." *See id.* at ¶¶ 42, 47, 49–50.

The Amended Complaint contends that a "strategic umbrella collusion" existed among various entertainment industry entities, pursuant to which there was an "inner flow of projects" and talent from which they would all ultimately benefit. *See id.* at ¶ 89. Noting the "large scale acquisition or merger" activity in the industry, the Amended Complaint asserts that "[t]he circumstantial pattern of fact in this case, suggests that these activities, as a group, *may well be interdependent and collusive.*" *Id.* at ¶ 95 (emphasis added).

The Amended Complaint alleges copyright infringement by two films, "Pagemaster," and "Twister," upon the copyrighted work of Rappoport called "Critical Scrutiny." *See id.* at ¶¶ 9–10, 99. The Amended Complaint also alleges copyright infringement by the television series "Wishbone," "Touched by an Angel," and "Through the Horn" upon the work of Rappoport called "Portland Stories" and "Critical Scrutiny." *See id.* at ¶ 13. As well, the Amended Complaint alleges:

1. Pagemaster incorporates "plaintiff's synopsis, video, PCA production and development work", *id.* at ¶ 17;

2. Twister "incorporates imagery from plaintiff's copyrighted work", *id.* at ¶ 18;

3. Two Diet Coke commercials "misappropriates [sic] the first special effects technique from plaintiff's synopsis", *id.* at ¶ 19;

4. Forrest Gump "misappropriates the second special effects technique from plaintiff's synopsis, PCA production and development work", *id.* at ¶ 20;

5. Jurassic Park "misappropriated technique for the placement of magnets to capture physical motion, and transfer to screen characters, from PCA production, recorded by Mr. Montgomery on September 4, 1992", *id.* at ¶ 21;

6. Wishbone misappropriates "from plaintiff's story and TV series conception of CRITICAL SCRUTINY, from PCA production, recorded by Mr. Montgomery on September 11, 1992", *id.* at ¶ 22;

7. Touched by An Angel misappropriates "from plaintiff's unpublished story and TV series conception of the GODDESS OF PORTLAND from PCA production, recorded by Mr. Montgomery on September 11, 1992", *id.* at ¶ 23; and

8. Through the Horn is "taken from the plaintiff's description of his unpublished story THE WATCHMAN'S TALE, recorded by Mr. Montgomery on September 11, 1992", *id.* at ¶ 24.

The second claim, for breach of implied contract and theft of trade secrets, alleges the improper disclosure and exploitation of the materials submitted to Pastor in 1991 and the misappropriation of elements from the copyrighted audiovisual work of Rappoport. *See id.* at ¶¶ 138–183. In addition to "Pagemaster" and "Twister," this claim complains of misappropriation by the Defendants in all of the following works: the film "Forrest Gump", two Diet Coke commercials, the film "Jurassic Park", the PBS television series "Wishbone", the CBS television series "Touched By An Angel", and a story entitled "Through the Horn."

The third claim is for false designation of origin under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), with respect to the credits of "Pagemaster" and "Twister," both of which Rappoport claims contain copyrightable elements from his work. *See id.* at ¶¶ 184–186.

The fourth claim alleges unfair restraint of trade, in violation of 15 U.S.C. § 1. *See id.* at ¶¶ 187–199.

Finally, the fifth claim asserts a RICO violation under 18 U.S.C. § 1962, again based on the alleged "formation of a criminal enterprise in New York and at PCA, for the purpose of defrauding the plaintiff of his valuable intellectual property for commercial exploitation." *Id.* at ¶ 201.

As mentioned, Rappoport seeks "accurate attribution for his work, and compensatory and punitive damages" because of the alleged conduct of the Defendants. *See* Amended Complaint at ¶¶ 8, 215–221.

Extraordinary steps were taken by Magistrate Judge Cavanaugh to organize and schedule the submission of the Post–Amend-

ment Motions and opposition from Rappoport to these motions. Specifically, Rappoport was encouraged to retain counsel; he declined to do so. *See* Transcript of 6 March 1998 Hearing at 4. Rappoport was advised the Post–Amendment Motions could result in not only transfer but also severance of certain portions of this case and transfer to more than one district. *See id.* at 13. Even after such discussions, Rappoport asked whether it was necessary for him to submit opposition to the Post–Amendment Motions or whether the court could "just look at the facts and apply the law." *Id.* at 15. As mentioned, Rappoport did submit opposition—albeit in the Rappoport Moving Brief submitted *in support of the Rappoport Motion to Transfer.*

*Discussion*

A. *Standard of Review for Pro Se Submissions*

■■■ Pro se submissions, " 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977); *see also Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652, *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *McDowell v. Delaware State Police,* 88 F.3d 188, 189 (3d Cir.1996); *United States v. Day,* 969 F.2d 39, 42 (3d Cir.1992) (holding *pro se* petition cannot be held to same standard as pleadings drafted by attorneys); *Lewis v. Attorney General of United States,*

878 F.2d 714, 722 (3d Cir.1989). When receiving a *pro se* complaint, a court must construe a plaintiff's factual allegations and his or her claims liberally. *See Neitzke v. Williams,* 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Haines,* 404 U.S. at 520, 92 S.Ct. 594; *Roman v. Jeffes,* 904 F.2d 192, 197 (3d Cir.1990).

B. *Venue*

The Amended Complaint asserts jurisdiction is proper in this District pursuant to, among other things, 28 U.S.C. § 1338 ("Section 1338").[24] *See* Amended Complaint at ¶ 5. Because jurisdiction is not founded solely upon diversity of citizenship, subsection (b) of § 1391 of Title 28 ("Section 1391") of the United States Code is one of the sections that govern in which district Rappoport was able to commence this action. *See* 28 U.S.C. § 1391(b); *see also Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 460, 462 (3d Cir.1996), *Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 293 (3d Cir. 1994).

Section 1391(b) provides:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred,* or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis added); *see Urrutia,* 91 F.3d at 462. For purposes of § 1391, "a defendant that is a corporation

---

**24.** Section 1338 provides:
(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.
(b) The district courts shall have original jurisdiction of any civil action asserting a

claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.
(c) Subsections (a) and (b) apply to exclusive rights in mask works under chapter 9 of title 17 to the same extent as such subsections apply to copyrights.
28 U.S.C. § 1338.

shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

In this case, all of the Defendants do not reside in the same state. *See* 28 U.S.C. § 1391(b)(1). For example, Nelson, Luppold, McCrossen and Slanina are residents of the State of Oregon while Montgomery is a resident of the State of California. *See* Nelson Aff. at ¶ 2; Luppold Aff. at ¶ 2; McCrossen Aff. at ¶ 2; Slanina Aff. at ¶ 2; Montgomery Certif. at ¶ 2. In addition, it is likely that several of the corporate Defendants are not "residents" of the same state for purposes of § 1391(b).

■ As such, an appropriate venue is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2). From a review of the Amended Complaint, the Rappoport Motion to Transfer and the submissions of the Defendants, it is apparent that a substantial part of the events or omissions giving rise to the claims by Rappoport did *not* occur in this District. Rappoport conceded as much when he filed the Rappoport Motion to Transfer which seeks to transfer the entire action to the District of Oregon.

In the Rappoport Moving Brief, Rappoport argues:

Based on the allegations in the plaintiff's amended complaint, the majority of acts taken against the plaintiff occurred in Oregon.

Rappoport Moving Brief at 1; *see* Rappoport Moving Brief at 4, 9. 11. Rappoport also contends: "The weight of acts is far greater on the ground in Oregon than in New Jersey or New York", *id.* at 7, and "[n]o other District has an interest in resolving this dispute that can even begin to compare with that of the District of Oregon." *Id.* at 2.

A review of the Amended Complaint also reveals that a substantial part of the events

or omissions giving rise to the claims by Rappoport did not occur in this District. The Amended Complaint asserts Rappoport submitted his work to Pastor in New York. *See* Amended Complaint at ¶¶ 6, 28. Pastor, in turn, allegedly misappropriated it and passed it to Spielberg and Ovitz. *See id.* at ¶ 77. The work of Rappoport was then allegedly incorporated in three separate projects, which projects "were organized into a trading flow among the defendants." *See id.* at ¶¶ 79–88. Although unclear from the Amended Complaint, it appears the alleged "trading flow among the defendants" did not occur in New Jersey.

The Amended Complaint also sets forth, for approximately five pages, the "wrongful and unfair conduct" of the Defendants while Rappoport was in Portland, Oregon. *See id.* at p. 9–13. Such conduct allegedly included the surreptitious recording of the work of Rappoport and the infiltration of Portland Cable by some of the Defendants. *See id.* at ¶¶ 56, 68.

The only nexus to this District appears to be that Rappoport currently resides here[25] and apparently made telephone calls to Pastor from here. *See id.* at ¶¶ 1–2. Based on the foregoing, venue is improper in this District pursuant to § 1391(b).

■ Because Rappoport has asserted claims against certain defendants for copyright infringement and for violations of RICO, however, additional venue statutes must be consulted. For example, § 1400 of Title 28 of the United States Code ("Section 1400") sets forth the proper venue in a copyright action. Section 1400 provides, in relevant part:

(a) Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works may be instituted in the district in which *the defendant or his agent resides or may be found.*

28 U.S.C. § 1400 (emphasis added).[26]

Section 1965 of Title 18 of the United States Code ("Section 1965") sets forth the

---

**25.** In the Rappoport Moving Brief, Rappoport indicated he intends to move to Oregon if the

action is transferred to the District of Oregon. *See* Rappoport Moving Brief at 1.

**26.** Venue may also be appropriate in a district in

proper venue in a RICO action. Section 1965 provides, in relevant part:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which *such person resides, is found, has an agent, or transacts his affairs.*

18 U.S.C. § 1965 (emphasis added).

Notwithstanding the provisions of § 1400 and § 1965, it appears venue is still not appropriate in this District for certain defendants. For example, Nelson, Luppold, McCrossen Slanina and Montgomery neither "reside in" nor are "found in" this District. *See* Nelson Aff.; Luppold Aff.; McCrossen Aff.; Slanina Aff.; Montgomery Certif. Accordingly, as to those defendants and possibly others, the claims against them must either be dismissed, or, if it is in the interest of justice, be transferred to a district in which the claims could have been brought in the first place. *See* 28 U.S.C. § 1406(a) ("Section 1406(a)"); [27] *see also Jumara,* 55 F.3d at 878.

■ Rappoport has pleaded allegations which, if proven to be true, may articulate viable causes of action. Where the option exists, claims against those defendants for whom venue is improper will be transferred to another district.

Similarly, even though venue may be appropriate in this District for some of the claims against some of the Defendants pursuant to § 1400 and/or § 1965, the claims as to those defendants will be transferred for the convenience of the parties and in the interests of justice. *See* 28 U.S.C. § 1404(a) ("Section 1404(a)"). It cannot be overlooked that, no party, including Rappoport, has suggested that this court should retain jurisdiction over any of the claims.

The question arises then to which district or districts the various claims should be

transferred. The parties dispute to which of four possible districts the entire action, or parts of it, should be transferred. Rappoport contends the entire action should be transferred to the District of Oregon. *See* Rappoport Moving Brief; Rappoport Reply Brief.

The Movie Defendants, Coca–Cola, CBS, Hill, TCI and Tropicana argue the claims against them should be severed and transferred to the Southern District of New York. *See* Film Defendants Moving Brief; Film Defendants Reply Brief; Coca–Cola Moving Brief; Coca–Cola Reply Brief; CBS Moving Brief; CBS Reply Brief; TCI Moving Brief; Tropicana Opposition Brief.

Star and Texaco contend the claims against them should be severed and transferred to the Northern District of Georgia. *See* Star Opposition Brief; Star Reply Brief; and the Texaco 17 June 1998 Letter. Big Feats asserts the claims against it should be severed and transferred to the Northern District of Texas.

The PCA Defendants and the City of Portland assert the claims against them should be severed and transferred to the District of Oregon. *See* PCA Defendants Moving Brief; PCA Defendants Reply Brief; City of Portland Moving Brief; City of Portland Reply Brief.

### C. *Severing the Claims*

In view of the conflicting motions to transfer the venue of this action, it must be determined whether the claims by Rappoport can, and should, be severed and transferred to different districts.

Rule 21 of the Federal Rules of Civil Procedure provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative

which the alleged copyright infringement occurred. *See Edy Clover Productions, Inc. v. NBC, Inc.,* 572 F.2d 119, 120–21 (3d Cir.1978). Rappoport does not clearly indicate in which districts the alleged infringement occurred.

**27.** Section 1406(a) provides:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

at any stage of the action and on such terms as are just. *Any claim against a Party may be severed and proceeded with separately.*

Fed.R.Civ.Pro. 21 (emphasis added).

 Misjoinder of defendants occurs where the plaintiff fails to satisfy any of the conditions of permissive joinder under Rule 20(a) of the Federal Rules of Civil Procedure. *See International Islamic Community of Masjid Baytulkhaliq, Inc. v. United States,* 981 F.Supp. 352, 361 (D.Vi.1997). Rule 20(a) states, in relevant part:

All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or *arising out of the same transaction, occurrence, or series of transactions or occurrences* and if any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.Pro. 20 (emphasis added). As mentioned, and discussed below, the claims by Rappoport against the Defendants do not arise "out of the same transaction, occurrence, or series of transactions or occurrences." It appears, from the Amended Complaint that each defendant not only allegedly used the work of Rappoport separately (e.g., in different movies and television series) but also used such work differently (e.g., in movies, television commercials, advertising campaigns, etc.). Accordingly, the claims against the Defendants will be severed. *See* Fed.R.Civ.Pro. 21.

Rule 21 has been held by at least one circuit court to authorize "the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance", such as where venue is improper as to certain defendants. *See Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618–19 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968) (citing *Sporia v. Pennsylvania Greyhound Lines,* 143 F.2d 105 (3d Cir.1944)). Without expressly relying on Rule 21, the Third Circuit has acknowledged that a portion of an action against certain defendants may be severed and transferred to another district. *See Cottman,* 36 F.3d at 296.

 In situations where the claims against one or more defendants are severed because of improper venue, a district court may then transfer the severed claims to another district pursuant to § 1404(a) or § 1406(a). *See Cottman,* 36 F.3d at 296; *Carver v. Knox County, Tenn.,* 887 F.2d 1287, 1293 (6th Cir. 1989) (severing certain claims and transferring to another district); *City of Virginia Beach, Va. v. Roanoke River Basin Assoc.,* 776 F.2d 484, 489 (4th Cir.1985); *In re Fine Paper Antitrust Litig.,* 685 F.2d 810, 819 (3d Cir.1982), *cert. denied,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983) (recognizing that "venue defects as to a party whose portion of the action has been severed do not bar transfer of the remainder of the action"); *Wyndham Assocs.,* 398 F.2d at 618–19; *Magee v. Essex–Tec Corp.,* 704 F.Supp. 543, 546 n. 2 (D.Del.1988); *United Nations Korean Reconstruction Agency v. Glass Prod. Methods, Inc.,* 143 F.Supp. 248, 249 (S.D.N.Y. 1956) (severing and transferring claims as to certain defendants); *see also* 15 James WM. Moore, *Moore's Federal Practice* § 111.12[2][b] at 111–61 (3d ed.1998); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 at 275–76 (2d ed.1986).

In *Cottman,* the Circuit stated:

In the situation where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice. One option is to transfer the entire case to another district that is proper for both defendants. *Another alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district.*

36 F.3d at 296 (emphasis added). As explained by the Second Circuit in *Wyndham Assocs.:*

[W]here the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants, at least in cases where, as here, the defendants as to whom venue

would not be proper in the transferee district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action.

398 F.2d at 618–619.

In this case, the claims should be severed and transferred to one or more other districts because a substantial part of the events or omissions giving rise to the claim did not occur in this District. Also, as mentioned, no party, including Rappoport, has requested that this court retain jurisdiction over any portion of the action. Finally, it appears the convenience of the parties and the interest of justice will be better served if the claims are severed and transferred.

As is discussed below, severance and transfer of the claims are warranted in this case because the administration of justice would be materially advanced by such action. First, considering the number of defendants named in the Amended Complaint it appears that one venue does not exist where all the claims of Rappoport can be litigated. Second, unlike the defendants in Cottman, many of the Defendants are "only indirectly connected," if at all, to the central allegations by Rappoport that his intellectual property was intentionally misappropriated by Pastor and other Defendants. For example, the City of Portland is described by Rappoport as a "contributory infringer" because it allegedly "had an obligation to prevent, the industrial espionage of the plaintiff's production at PCA." Amended Complaint at ¶¶ 125–126. Portland Cable is also described as a "contributory infringer" because it "either knew or should have known of the infringing activity taking place on its premises." Id. at ¶ 124.

The claims by Rappoport appear to be separate and distinct because they arise from separate and distinct acts by the Defendants and involve separate and distinct property. See Amended Complaint. For example, Rappoport contends certain defendants, namely News Corp., Spielberg, Montgomery and Ovitz, intentionally misappropriated his intellectual property. See id. at ¶¶ 11, 42, 77–82.

Other defendants, namely Turner Pictures, Fox, Kirschner and Hunt, are alleged to have infringed on the work of Rappoport through the motion picture "Pagemaster." See id. at ¶¶ 9, 96. Warner Bros., Universal, Amblin, Spielberg and ILM are alleged to have infringed upon the work of Rappoport through the motion picture "Twister." See id. at ¶¶ 10, 97, 114. Also, Rappoport asserts certain defendants, namely Portland Cable and the City of Portland, failed to stop the alleged misappropriation and therefore are liable as "contributory infringers." See id. at ¶¶ 124–127. In addition, Rappoport alleges Pizza Hut, Nabisco, Texaco (and presumably Star), Dow, Tropicana and Kellogg are liable as "promotional tie-in partners." See id. at ¶¶ 19–24.

The only item which even remotely ties all of the Defendants together is the far-fetched allegation by Rappoport that all of them are part of a "strategic umbrella collusion." This conclusory allegation is not sufficient to justify the joinder of all Defendants in a single action pursuant to Rule 20 of the Federal Rules of Civil Procedure. Rappoport has not pleaded facts which demonstrate the Defendants were part of a "single common plan." Because many of the claims are unrelated, the severance and transfer of certain claims to different districts is appropriate.

### D. Transfer

Section 1404(a) authorizes a district court to transfer a case to any other district where venue is proper "[f]or the convenience of the parties and witnesses, in the interests of justice...." 28 U.S.C. § 1404(a).[28] The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safe guard litigants, witnesses and the public against avoidable inconvenience and expense. See Ricoh Co. Ltd v. Honeywell, Inc. ("Honeywell"), 817 F.Supp. 473 (D.N.J. 1993); American Tel. & Tel. Co. v. MCI Communications Corp., 736 F.Supp. 1294, 1305 (D.N.J.1990). As a preliminary matter, it must be determined that the transferee

---

**28.** Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

venue is one in which the case "might have been brought." *See* 28 U.S.C. § 1404(a); *American Tel. & Tel. Co.*, 736 F.Supp. at 1305.

■ The terms of § 1404(a) set forth three factors to consider when determining whether to transfer a matter: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *See* 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879; *Hudson United Bank v. Chase Manhattan Bank of Conn., NA*, 832 F.Supp. 881, 887 (D.N.J.1993), *aff'd*, 43 F.3d 843 (3d Cir.1994); *Honeywell*, 817 F.Supp. at 479. The transfer analysis, however, should not be limited to these three factors. Rather, the decision to transfer must incorporate "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citation omitted); *Hudson United Bank*, 832 F.Supp. at 888.

■ Transfer analysis under § 1404 is a flexible and individualized analysis and must be made on the unique facts presented in each case. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–250, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982). A determination that transfer to another jurisdiction is appropriate represents an " 'exercise[ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.' " *Honeywell*, 817 F.Supp. at 479 (quoting *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989) (hereinafter *"Lony I"*) (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 781

(D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)). There is no rigid rule governing a court's determination; " '[e]ach case turns on its facts.' " *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir.1988) ("Lacey I"). Added to those factors are the "interests of justice" and the impact on judicial administration of maintaining related actions in separate fora. *See Honeywell*, 817 F.Supp. at 479.

■ In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court listed various factors which should be considered when deciding if a certain action should be transferred.[29] These factors fall into two broad categories. The first includes factors relating to the "private interests" of the parties in the context of the litigation. The types of private interests may include the choice of forum of the plaintiff, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the possibility of a jury view of the premises. *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839; *Fortay v. University of Miami*, No. 93–3443, 1994 WL 62319, at *8 (D.N.J. Feb.17, 1994); *American Tel. & Tel.*, 736 F.Supp. at 1306. Other private interests may include the preference of the defendant, whether the claim arose elsewhere, and the location of books and records. *See Jumara*, 55 F.3d at 879; *Fortay*, 1994 WL 62319, at *8.

The second category consists of the "public interest" in the administration of courts and the adjudication of cases. Public interests include court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interest in having a matter adju-

**29.** *Gulf Oil* involved a motion to dismiss under the doctrine of *forum non conveniens*. Courts routinely look to the *Gulf Oil* factors for guidance on § 1404(a) motions. *See Honeywell*, 817 F.Supp. at 479 n. 16. As well, Third Circuit decisions such as *Lony I, Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir.1991) (hereinafter *"Lony II"*) and *Lacey I*, which involve motions to dismiss under the doctrine of *forum non conveniens*, are relevant to a motion to transfer under § 1404(a).

Federal courts have broader discretion to transfer an action under Section 1404(a), than to

dismiss under the common law doctrine of *forum non conveniens*. *See Joint Stock Soc. Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F.Supp. 177, 191 (D.Del.1996) (citation omitted); *Ruccolo v. BDP, Int'l. Inc.*, No. 95–2300, 1996 WL 735575, at *17 & n. 9 (D.N.J. Mar. 25, 1996). *Cf. Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir.), *reh'g denied en banc* (3d Cir.1991) ("Lacey II"); *Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835, 840–41 (D.N.J.1991).

dicated at home and familiarity of the forum court with the applicable law. *See Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839; *Jumara,* 55 F.3d at 879; *Fortay,* 1994 WL 62319, at *8; *American Tel. & Tel.,* 736 F.Supp. at 1307.

▪ The moving party has the burden of persuasion on a motion to transfer. *See Jumara,* 55 F.3d at 879; *Lony II,* 935 F.2d at 609; *Lony I,* 886 F.2d at 633; *Lacey I,* 862 F.2d at 44; *Tranor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa.1996); *Fortay,* 1994 WL 62319, at *8; *Honeywell,* 817 F.Supp. at 480. The burden is not on the plaintiff to show the proposed alternative forum is inadequate. *See Honeywell,* 817 F.Supp. at 480; *American Tel. & Tel.,* 736 F.Supp. at 1305. Rather, the burden is on the moving party to show the proposed alternative forum is not only adequate, but also more convenient than the present forum. *See Jumara,* 55 F.3d at 879; *Lacey I,* 862 F.2d at 43–44; *Honeywell,* 817 F.Supp. at 480. Generally, a moving party must submit " 'adequate data of record' " to facilitate the analysis. *See Fortay,* 1994 WL 62319, at *2 (quoting *Honeywell,* 817 F.Supp. at 480).

▪ A "district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion" that transfer to another venue is appropriate. *See Lacey I,* 862 F.2d at 39; *see also Hudson United Bank,* 832 F.Supp. at 888; *Honeywell,* 817 F.Supp. at 480. The moving party must submit sufficient information in the record to facilitate the appropriate analysis and to meet its burden of persuasion. *See Piper,* 454 U.S. at 258, 102 S.Ct. 252; *Fortay,* 1994 WL 62319, at *2 (quoting *Honeywell,* 817 F.Supp. at 480). This inquiry does not necessarily require extensive investigation. *See Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). The inquiry into the interests of the parties may be resolved by an examination of the affidavits submitted in the matter. *See id.; Lacey I,* 862 F.2d at 44; *Honeywell,* 817 F.Supp. at 480; *see also Fortay,* 1994 WL 62319, at *2. From that basis, the contentions of the plaintiff and the relevant private and public interests must be considered and balanced. *See Hudson United Bank,* 832 F.Supp. at 888.

▪ A defendant seeking a transfer must also establish an adequate alternative forum exists for the dispute. *See Lacey I,* 862 F.2d at 43. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction," unless "the remedy offered by the other forum is clearly unsatisfactory." *Piper,* 454 U.S. at 254 n. 22, 102 S.Ct. 252.

### 1. Private Interests

The primary private interests in this action are the original choice of forum by Rappoport [30] and the convenience of the available districts with regard to the sources of proof, namely the witnesses and documentary evidence.

### a. Choice of Forum

▪ In the Third Circuit, the choice of forum by a plaintiff is normally a "paramount concern" in deciding a motion to transfer venue. *See Honeywell,* 817 F.Supp. at 480; *see also Shore Slurry Seal, Inc. v. CMI Corp.,* 964 F.Supp. 152, 156 (D.N.J.1997) (stating choice of proper forum by plaintiff is "paramount consideration" in a transfer analysis); *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd.,* 847 F.Supp. 1244, 1246 (D.N.J.1994) (discussing choice of forum by plaintiff is accorded "significant weight"). The choice is "entitled to greater deference" when a plaintiff chooses its home forum. *See Honeywell,* 817 F.Supp. at 480.

▪ Indeed, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839; *Honeywell,* 817 F.Supp. at 480 (quotation omitted); *see also Lony II,* 935 F.2d at 609; *Lacey I,* 862 F.2d at 44. The forum chosen by a plaintiff is considered to be presumptively correct. *See Lacey I,* 862 F.2d at 45; *Hudson United Bank,* 832 F.Supp. at 888; *Honeywell,* 817 F.Supp. at

---

**30.** As explained below, *see infra* p. 47, Rappoport has waived any consideration given to his selection of the District of New Jersey as the forum for the action.

480; *Mediterranean Golf,* 783 F.Supp. at 842.

■ This presumption, however, is not dispositive. *See American Tel. & Tel.,* 736 F.Supp. at 1306. The choice of forum by a plaintiff is not the only factor to be considered in a transfer analysis. *See Honeywell,* 817 F.Supp. at 480; *American Tel. & Tel.,* 736 F.Supp. at 1306. It is simply a preference; it is not a right. *See Honeywell,* 817 F.Supp. at 480; *American Tel. & Tel. Co.,* 736 F.Supp. at 1306. In certain circumstances, a choice of forum by a plaintiff is afforded less weight.

One situation where deference is curbed is when a the choice of forum by a plaintiff has little connection with the operative facts of the lawsuit. *See Newcomb,* 847 F.Supp. at 1246; *Honeywell,* 817 F.Supp. at 481 (stating "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's section of that forum is entitled to less deference."); *see also National Micrographics Sys. v. Canon U.S.A.,* 825 F.Supp. 671, 681 (D.N.J.1993); *American Tel. & Tel.,* 736 F.Supp. at 1306.

■ As mentioned above, New Jersey has no connection with the operative facts of the lawsuit. Accordingly, the original choice of this forum by Rappoport is accorded little weight. More importantly, the decision by Rappoport to move to transfer the action to the District of Oregon undermines any weight to his initial choice of forum. Rappoport is now in the same position as the Defendants who have moved to transfer the action. The issue is no longer whether to transfer; rather, the issue is where to transfer this action or the discrete portions of this action.

b. *Access to Proof*

The second relevant factor under the private interest analysis is the convenience of the witnesses and the evidence of both parties to the available districts. The Supreme Court has stated:

To examine 'the relative ease of access to sources of proof' and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is re-quired, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. 1945 (quoting *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839).

None of the parties, including Rappoport, has suggested that the trial of the action in this District will be more convenient for the parties or will provide them with better access to the sources of proof. Accordingly, each party must demonstrate its proposed alternative forum is more convenient for the witnesses and that access to proof is available in the transferee district.

2. *Public Interest*

■ The public interest factors relevant to a determination of the propriety of transfer include

the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home;" the interest in having a trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems and conflicts of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Lony I,* 886 F.2d at 640 (quoting *Piper* 454 U.S. at 241 n. 6, 102 S.Ct. 252). Evaluation of the public interest factors include consideration of "the locus of the alleged culpable conduct ... and the connection of the conduct to plaintiff's chosen forum." *Lacey I,* 862 F.2d at 48 (quoting *Van Cauwenberghe,* 486 U.S. at 529, 108 S.Ct. 1945); *see also Lony II* 935 F.2d at 612.

a. *Local Interests*

The actions of the Defendants allegedly giving rise to the instant litigation occurred in other venues. *See* Amended Complaint at ¶¶ 16, 201–02. None of the acts resulting in the commencement of the instant matter appear to have transpired in New Jersey. Besides the fact that Rappoport and at least

one defendant (Nabisco) are residents of New Jersey and certain defendants do business within this state, there appears to be no connection with New Jersey.

This minimal asserted connection with New Jersey does not impact the transfer analysis. *See Kirschner Bros. Oil, Inc. v. Pannill,* 697 F.Supp. 804, 807 (D.Del.1988) ("[T]he incorporation of some of the [d]efendants in Delaware is of little consequence" in determining whether to transfer venue.) Accordingly, it appears a jurisdiction other than New Jersey has a stronger public interest in adjudicating this dispute. *See Lacey I,* 862 F.2d at 48; *Honeywell,* 817 F.Supp. at 486; *Mediterranean Golf,* 783 F.Supp. at 849–50. Which jurisdiction has a stronger public interest in adjudicating this dispute is addressed below.

#### b. *Burden of Jury Duty*

The burden of jury duty " 'ought not to be imposed upon the people of a community which has no relation to the litigation.' " *Honeywell,* 817 F.Supp. at 486 (quoting *Ferens v. John Deere Co.,* 494 U.S. 516, 529–30, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (citing *Gulf Oil,* 330 U.S. at 508–09, 67 S.Ct. 839)).

Rappoport has made a demand for a jury trial in the instant matter. *See* Civil Cover Sheet.[31] New Jersey jurors should not be burdened with adjudicating a matter concerning alleged conduct which has virtually no connection with New Jersey. *See Pain,* 637 F.2d at 792 (stating jury duty should not be imposed, nor local dockets clogged by, cases with little relation to jurisdiction). Accordingly, this factor, as well, weighs in favor of the transfer of the action to another district.

#### c. *Applicable Law*

An important public interest factor is the desire to have the case tried before judges familiar with the applicable law. *See Hudson United Bank,* 832 F.Supp. at 888.

Most of the claims by Rappoport involve federal law, namely copyright infringement, RICO, and false designation of origin. As such, this consideration has little impact upon the transfer analysis. The applicable law has yet to be determined in connection with the state law causes of action.

#### d. *Interests of Justice*

Another significant criteria in determining the advisability of transfer is whether transfer would promote the interests of justice. *See Jumara,* 55 F.3d at 878–880; *Honeywell,* 817 F.Supp. at 487.

As mentioned above, and is explained below, the severance and transfer of the action will promote the interests of justice.

### E. *The Individual Motions*

#### 1. *The Rappoport Motion to Transfer to the District of Oregon*

The Rappoport Motion to Transfer seeks to transfer the entire action to the District of Oregon pursuant to § 1404(a) and/or § 1406(a).

■ A plaintiff seeking to transfer the venue of an action pursuant to § 1404 typically must demonstrate a change in circumstance that has occurred since the filing of the action which warrants a change of venue. *See Jennings v. Entre Computer Centers, Inc.,* 660 F.Supp. 712, 715 (D.Me.1987); *Cremin v. Canadian National Railway Corp.,* No. 84–8770, 1986 WL 4065, at *3 (S.D.N.Y. Apr. 3, 1986); *Fothergill v. Parker,* No. 83–963, 1984 U.S.Dist. LEXIS 16285, at *6 (D.Mass. May 30, 1984); *James v. Daley & Lewis,* 406 F.Supp. 645, 648 (D.Del.1976); *Harry Rich Corp. v. Curtiss–Wright Corp.,* 308 F.Supp. 1114, 1118 (S.D.N.Y.1969); *Roberts Bros., Inc. v. Kurtz Bros.,* 231 F.Supp. 163, 167 (D.N.J.1964); *Leyden v. Excello Corp.,* 188 F.Supp. 396, 397 (D.N.J.1960).

■ Rappoport has offered little in support of his motion to suggest that relevant information regarding the proper venue for

---

31. It appears Rappoport did not make a demand for a jury trial in the Complaint or the Amended Complaint. Nevertheless, the request for a jury, as included in the Civil Cover Sheet, should be granted. *See Neitzke,* 490 U.S. at 330 n. 9, 109

S.Ct. 1827; *Haines,* 404 U.S. at 520, 92 S.Ct. 594; *Roman,* 904 F.2d at 197 (stating court must construe allegations in *pro se* complaint liberally).

this action was not known to him or easily ascertainable by him at the time the Complaint and the Amended Complaint were filed. Rappoport states that he is moving to transfer the entire action to the District of Oregon at this time for the following reasons:

> [I]n consideration of the briefs filed by opposing counsel, the jurisdictional concerns raised by this Court at the first scheduling conference on March 6, a review of the relevant statutes concerning jurisdiction and venue, and a careful consideration of the relevant factors in this particular case, all render a transfer of venue to Oregon the plaintiff's only likely viable option for having his claims heard on the merits in a single forum.

Rappoport Moving Brief at 1. Rappoport did not suggest that any circumstances have changed since the time he filed the Complaint, other than the fact he has become more familiar with the applicable law. *See* Rappoport Reply Brief. Extending the benefit of the most favorable review, the Rappoport Motion to Transfer is denied in part [32] on the basis that Rappoport has failed to submit sufficient proof to justify transferring the entire action to the District of Oregon. For example, unlike many of the Defendants, Rappoport did not submit any affidavits in support of his motion.

As mentioned, the moving party has the burden of persuasion on a motion to transfer. *See Jumara,* 55 F.3d at 879; *Lony II,* 935 F.2d at 609; *Lony I,* 886 F.2d at 633; *Lacey I,* 862 F.2d at 44; *Tranor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa.1996); *Fortay,* 1994 WL 62319, at *8; *Honeywell,* 817 F.Supp. at 480. Despite having this burden, Rappoport argues most of the Defendants have not asserted they are not subject to jurisdiction in Oregon. *See* Rappoport Reply Brief at 2. It is the burden of Rappoport to demonstrate all of the Defendants are subject to jurisdiction in Oregon, not the burden of the Defendants to demonstrate they are not subject to

jurisdiction there. *See Jumara,* 55 F.3d at 879; *Lony II,* 935 F.2d at 609; *Lony I,* 886 F.2d at 633; *Lacey I,* 862 F.2d at 44; *Tranor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa. 1996); *Fortay,* 1994 WL 62319, at *8; *Honeywell,* 817 F.Supp. at 480.

Rappoport also failed to submit sufficient evidence, indeed, any evidence, to establish that it will be more convenient for all parties involved to have the action adjudicated in the District of Oregon. For example, he asserts, in conclusory fashion:

> [The] transfer of this case to the District of Oregon would in no way be prejudicial to the defendants.

> Any possible defects alleged by any of the defendants, such as a lack of personal jurisdiction, improper venue, or insufficiency of service, are in this case, most appropriately cured through transfer....

> All of the potential non-party witnesses ... are likely to be found in Oregon. None are in New Jersey, New York, Georgia or Texas.... Oregon would obviously be most cost-effective from the standpoint of the witnesses.

Rappoport Moving Brief at 1, 2, 5, 7. Such conclusory allegations are usually insufficient to support or to defeat a motion to transfer. *See Honeywell,* 817 F.Supp. at 480; *American Tel. & Tel.,* 736 F.Supp. at 1305; *Hudson United Bank,* 832 F.Supp. at 888; *Staats v. Robinson Helicopter Co.,* No. 88–3601, 1989 WL 16071, at *2 (D.N.J. Feb. 22, 1989). Rappoport has also failed to directly respond to the assertions by some of the Defendants that other fora are more convenient for the adjudication of his claims. For these reasons, the Rappoport Motion to Transfer is denied in part.[33] *See, e.g., Honeywell,* 817 F.Supp. at 484 (granting motion to transfer venue where party opposing transfer "failed to submit by affidavit" the "names of ... witnesses, the employment positions and responsibilities of those witnesses or the pro-

**32.** The Rappoport Motion to Transfer is granted as to the claims by Rappoport against the City of Portland, the PCA Defendants, Ovitz, Kirschner and Kellogg. With regard to the City of Portland and the PCA Defendants, the Rappoport Motion to Transfer is granted because these defendants also moved to transfer the action to the District

of Oregon. With regard to Ovitz, Kirschner and Kellogg, the Rappoport Motion to Transfer is granted because they failed to file opposition to the Rappoport Motion to Transfer.

**33.** *See supra* note 32.

posed testimony those witnesses would provide.").

### 2. *The Motions to Transfer to the Southern District of New York*

The Movie Defendants, CBS, Hill, Coca–Cola and Tropicana have all moved to sever the claims asserted against them and to transfer such claims to the Southern District of New York in accordance with § 1404(a). CBS, Hill, Coca–Cola and Tropicana have submitted briefs which essentially adopt the arguments set forth in the briefs submitted by the Movie Defendants. As such, the Movie Defendants Motion to Transfer is addressed first.

#### a. *The Movie Defendants*

Based upon the affidavits submitted in connection with the Movie Defendants Motion to Transfer, it appears each of the Movie Defendants is subject to jurisdiction, or has consented to jurisdiction, in New York. *See* Hirsch Certif.; Wales Certif.; Epstein Certif.; Kender Certif.; Hartman Certif.; Marks Certif. I; Springer Certif.; Morgan Certif.; Biber Certif.; Daniels Certif.; Wooster Certif. Moreover, as mentioned, it appears a substantial portion of the alleged acts giving rise to the claims against the Movie Defendants took place in New York when Pastor allegedly misappropriated the work of Rappoport. As such, the claims against the Movie Defendants originally could have been brought in the Southern District of New York in accordance with § 1391(b).

It also appears the Southern District of New York is a more convenient forum to litigate the claims against the Movie Defendants. From a review of the affidavits submitted by the Movie Defendants, it appears the individuals whom the Movie Defendants are likely to call as witnesses at trial are either based in New York or have significant operations there. *See* Hirsch Certif.; Wales Certif.; Epstein Certif.; Kender Certif.; Hartman Certif.; Marks Certif. I; Springer Certif.; Morgan Certif.; Biber Certif.; Daniels Certif.; Wooster Certif. Because many of the Movie Defendants maintain offices in New York, it will be less disruptive for their employees to appear at trial in the Southern District of New York where they conduct business and where they can continue to perform their day-to-day responsibilities.

Importantly, a central figure in this case, Pastor, is a non-party witness. He is a New York resident, and beyond the subpoena power of the District of Oregon. *See, e.g., National Property Investors VIII v. Shell Oil Co.,* 917 F.Supp. 324, 328 (D.N.J.1995). "The amenability of potential witnesses to compulsory process is a factor a Court weighs in a Section 1404(a) analysis." *Id.* Transferring the claims against the Movie Defendants to the Southern District of New York will, if necessary, place Pastor within the subpoena power of that court.

It also appears the ease of access to sources of proof will be served by transferring the claims against the Movie Defendants to the Southern District of New York. Many relevant documents are likely to be located in New York. In addition, the Movie Defendants have agreed to produce in New York those items which are not located in New York. *See* Hirsch Certif.; Wales Certif.; Epstein Certif.; Kender Certif.; Hartman Certif.; Marks Certif. I; Springer Certif.; Morgan Certif.; Biber Certif.; Daniels Certif.; Wooster Certif. Such agreement by the Movie Defendants will lessen the expenses Rappoport need incur in litigating his claims.

The public interests also favor a transfer of the claims against the Movie Defendants to the Southern District of New York. It appears many of non-copyright claims alleged by Rappoport arise out of conduct in New York, namely the alleged submission to Pastor, the alleged breach of an agreement to treat the submission as "confidential," and the theft of the trade secrets alleged to have been contained within the submission. It appears, New York law may control with respect to the state law claims. *See, e.g., NL Indus., Inc. v. Commercial Union Ins. Co.,* 65 F.3d 314, 319 (3d Cir.1995); *National Property,* 917 F.Supp. at 330; *State Farm Mutual Auto. Ins. v. Estate of Simmons,* 84 N.J. 28, 34, 417 A.2d 488 (1980).

In addition, New York has a strong interest in the proper application of its laws to persons doing business within its jurisdiction.

Local interests favor the transfer of the claims against the Movie Defendants to the Southern District of New York. Finally, because a substantial portion of the alleged events giving rise to the claims by Rappoport occurred in New York, requiring New York citizens to serve as jurors is appropriate.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against the Movie Defendants are severed and transferred to the Southern District of New York.

### b. *CBS and Hill*

CBS maintains its principal office in the Southern District of New York and thus is subject to jurisdiction in that District. *See* CBS Moving Brief at 2. As mentioned, it appears a substantial portion of the alleged acts giving rise to the claims against CBS and Hill[34] took place in New York. As such, the claims against CBS and Hill originally could have been brought in the Southern District of New York pursuant to § 1391(b).

It appears the Southern District of New York is a more convenient forum to litigate the claims against CBS and Hill for several reasons. First, CBS asserts "all relevant documents and discoverable objects (assuming they exist) can be expediently gathered" in the Southern District of New York. *See* CBS Moving Brief at 2. CBS also claims that, because it is headquartered in New York, the Southern District of New York would be a more convenient forum for its witnesses. *See* CBS Moving Brief at 2.

CBS also asserts it will be prejudiced if the claims against it are transferred to the District of Oregon. *See* CBS Reply Brief at 2. Specifically, CBS contends all relevant documents would be far more expeditiously gathered in New York. *See* CBS Reply Brief at 2. In addition, CBS argues it would be more difficult to present witnesses from its corporate offices in New York. *See* CBS Reply Brief at 2. Finally, CBS asserts the transfer of the claims against it to Oregon will require CBS to retain and educate new local counsel while the matter could be handled in New

York on an in-house basis. *See* CBS Reply Brief at 2. Rappoport has offered no evidence to contradict these representations.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against CBS and Hill are severed and transferred to the Southern District of New York. As explained in connection with Movie Defendants Motion to Transfer, both the private and public interest factors favor the transfer of these claims to the Southern District of New York. .

### c. *Coca–Cola*

It appears from the Amended Complaint the only claim by Rappoport against Coca–Cola is that two Diet Coke television commercials incorporated a "special effects technique" that Rappoport claims to have developed. *See* Amended Complaint at ¶¶ 154, 157.

Coca–Cola concedes it is subject to jurisdiction in New York. *See* Coca–Cola Moving Brief at 4. As mentioned, it appears a substantial portion of the alleged acts giving rise to the claims against Coca–Cola took place in New York. As such, the claims against Coca–Cola originally could have been brought in the Southern District of New York pursuant to § 1391(b).

It appears the Southern District of New York is a more convenient forum to litigate the claims against Coca–Cola. Coca–Cola asserts the key individuals involved with the two diet Coke commercials are principally located in New York. *See* Coca–Cola Moving Brief at 3; Coca–Cola Reply Brief at 3. Similarly, Coca–Cola contends documents and other evidence relevant to its defense are located in New York. *See* Coca–Cola Moving Brief at 4; Coca–Cola Reply Brief at 3. Again, Rappoport has offered no evidence to contradict these representations.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against

---

34. The CBS Reply Brief states Hill is a former CBS employee residing in California. *See* CBS Reply Brief at 1. Because it appears he has joined in the CBS Motion to Transfer, he presumably is subject to jurisdiction in New York.

Coca–Cola are severed and transferred to the Southern District of New York. As explained in connection with Movie Defendants Motion to Transfer, both the private and public interest factors favor the transfer of these claims to the Southern District of New York.

### d. *Tropicana*

It appears from the Amended Complaint that Tropicana is alleged by Rappoport to have indirectly infringed upon the rights of Rappoport in connection with Tropicana's promotion "tie–in" with the movie "Pagemaster."

Tropicana consents to jurisdiction in New York. As mentioned above, it appears a substantial portion of the alleged acts giving rise to the claims against Tropicana took place in New York. As such, the claims against Tropicana originally could have been brought in the Southern District of New York pursuant to § 1391(b).

It appears the Southern District of New York is a more convenient forum to litigate the claims against Tropicana. Tropicana asserts a transfer to the Southern District of New York would be more convenient for it. *See* Tropicana Moving Brief at 4. In addition, Tropicana states that its counsel is located in New York City. *See* Tropicana Moving Brief at 4. Again, Rappoport has offered nothing to contradict these arguments.

The convenience of the parties and witnesses and the interests of justice will be served if the claims against Tropicana are severed and transferred to the Southern District of New York. As explained in connection with Movie Defendants Motion to Transfer, both the private and public interest factors favor the transfer of these claims to the Southern District of New York.

Based upon the foregoing, the motions by the Movie Defendants, CBS, Hill, Coca–Cola and Tropicana are granted; the claims against these defendants are transferred to the Southern District of New York.[35]

---

**35.** As explained below, the claims against TCI are also severed and transferred to the Southern

### 3. *The Star/Texaco Motion to Transfer to the Northern District of Georgia*

■ The Amended Complaint asserts Star and/or Texaco were "promotional tie-in partners" for the film "Pagemaster" and are liable to Rappoport for the use of the "Pagemaster" rights because "Pagemaster" allegedly infringes upon the work of Rappoport. *See* Amended Complaint at ¶¶ 21, 130–133. Texaco asserts Star, not it, was responsible for the "Pagemaster" promotion.

Star is a Delaware partnership with its principal place of business in Houston, Texas. *See* Carrie Aff. at T 3. Star contends it does not do business in and is not subject to jurisdiction in Oregon. *See* Carrie Aff. at T 4. The marketing headquarters of Star is located in Norcross, Georgia; Star is subject to jurisdiction in the Northern District of Georgia. *See* Carrie Aff. at ¶ 1. Texaco has stated it "will not contest personal jurisdiction in the Northern District of Georgia to resolve" the claims against it. *See* Texaco 17 June 1998 Letter.

Star contends:

[A]ll of the planning sessions and negotiations relating to the creation of the *Pagemaster* promotion involving Star personnel took place in Norcross; all of the decisions relating to the commencement of the promotion were made by Star managers in Norcross; and all communications between Star and its [advertising agencies] concerning the creation of or rights in the *Pagemaster* promotion either took place during meetings in Norcross or in telephone conversations between Star employees in Norcross and [advertising] employees in Texas or [advertising] employees in Illinois.

*See* Carrie Aff. at ¶ 13. As such, it appears a substantial portion of the acts giving rise to the claims against Star and Texaco took place in Georgia. As such, the claims against Star and Texaco originally could have been brought in the Northern District of Georgia pursuant to § 1391(b).

District of New York. *See infra* p. 69–70.

It appears the Northern District of Georgia is a more convenient forum to litigate the claims against Star and Texaco. Star asserts that most of its employees who where involved in the *Pagemaster* promotion are still located in or near Norcross, Georgia. *See* Carrie Aff. at ¶ 14. In addition, Star asserts any documents relevant to the planning and execution of the *Pagemaster* promotion are likely to be located in its files in Norcross, Georgia. *See* Carrie Aff. at ¶ 17. Rappoport has offered nothing to contradict. these representations.

The public interests also favor a transfer of the claims against Star and Texaco to the Northern District of Georgia. Georgia has a strong interest in the proper application of its laws to persons doing business within its borders. Moreover, requiring Georgia citizens to serve as jurors is appropriate.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against Star and Texaco are severed and transferred to the Northern District of Georgia.

### 4. *The Big Feats Motion to Transfer to the Northern District of Texas*

 It appears from the Amended Complaint that the only claim by Rappoport against Big Feats is that the television series produced by Big Feats, "Wishbone," infringes upon two of his works entitled "The Goddess of Portland" and "Critical Scrutiny."

Big Feats allegedly is the owner of copyrights to the television series "Wishbone." *See* Slocum Aff. at ¶ 6. The series has aired nationwide. *See* Slocum Aff. at ¶ 7. Big Feats maintains its principal place of business in Richardson, Texas. *See* Slocum Aff. at ¶ 5; Advocate Certif. at 2. It also maintains satellite offices in Allen, Texas and Plano, Texas. *See* Slocum Aff. at ¶ 5. Big Feats conducts all production and development of the Wishbone series at its offices in Texas. *See* Slocum Aff. at ¶ 10. Big Feats neither has employees nor maintains any documents concerning "Wishbone" outside of Texas. *See* Slocum Aff. at ¶¶ 11–12.

It appears a substantial portion of the alleged acts giving rise to the claims against Big Feats took place in Texas, namely the production of "Wishbone." As such, the claims against Big Feats originally could have been brought in the Northern District of Texas pursuant to § 1391(b).

In addition, it appears the Northern District of Texas is a more convenient forum to litigate the claims against Big Feats. Big Feats asserts the relevant witnesses and evidence are located in Texas. *See* Slocum Aff. at ¶ 14; Advocate Certif. at ¶ 7. Moreover, Big Feats contends that, Mr. Richard Duffield ("Duffield"), the alleged creator of "Wishbone" and former Executive Producer of the series, will be its primary witness at trial. *See* Slocum Aff. at ¶ 9; Advocate Certif. at ¶ 3. Duffield is a limited partner in Big Feats and currently resides in Parker, Texas. *See* Slocum Aff. at ¶ 8. Duffield has allegedly indicated his desire not to become involved in this action. *See* Slocum Aff. at ¶ 9; Advocate Certif. at ¶ 6. As such, a subpoena may be needed to secure the testimony of Duffield. Transferring the claims against Big Feats to the Northern District of Texas will enable a subpoena to be served on Duffield. Rappoport has offered no evidence to contradict these representations.

The public interests also favor a transfer of the claims against Big Feats to the Northern District of Texas. Texas has a strong interest in the proper application of its laws to persons doing business within its borders. Moreover, requiring Texas citizens to serve as jurors is appropriate.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against Big Feats are severed and transferred to the Northern District of Texas.

### 5. *The Motions to Dismiss/Transfer*

#### a. *The TCI Motion to Dismiss/Transfer to the Southern District of New York*

 The Amended Complaint is essentially devoid of specific allegations of wrongdoing by TCI. *See* Amended Complaint. It appears from the Amended Complaint that TCI was allegedly part of the "strategic umbrella collusion" that traded the intellectual property of Rappoport. *See id.*

TCI moves to dismiss the claims asserted against it by Rappoport on the ground that it is not subject to jurisdiction in New Jersey. In the alternative, TCI seeks to have the claims asserted against it severed and transferred to the Southern District of New York. In this regard, TCI joined in the Movie Defendants Motion to Transfer. *See* TCI Moving Brief.

■ A district court may transfer art action to another district court even if it lacks jurisdiction over a defendant. *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465–466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Carteret Sav. Bank, FA v. Shushan,* 919 F.2d 225, 231 (3d Cir.1990); *United States v. Berkowitz,* 328 F.2d 358, 361 (3d Cir.1964); *Telesis Mergers & Acquisitions, Inc. v. Atlis Fed. Svcs., Inc.,* 918 F.Supp. 823, 829 (D.N.J. 1996). Accordingly, faced with the choice in the TCI Motion to Dismiss/Transfer of dismissing the claims against TCI for lack of personal jurisdiction or transferring the case to the Southern District of New York, it appears transfer is appropriate for the same reasons articulated in connection with the Movie Defendants Motion to Transfer.

As mentioned, it appears a substantial portion of the alleged acts giving rise to the claims against TCI took place in New York when Pastor allegedly misappropriated the work of Rappoport. In addition, a central figure in this case, Pastor, is a non-party witness who is subject to the subpoena power of the Southern District of New York.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against TCI are severed and transferred to the Southern District of New York.

b. *The PCA Defendants Motion to Dismiss/Transfer*

■ The crux of allegations by Rappoport against the PCA Defendants is that Portland Cable and several of its employees helped or allowed Montgomery to get access to the work of Rappoport in Portland, to copy or steal that work in Portland, and to destroy evidence of these actions in Portland. *See* Amended Complaint at ¶¶ 41–67. Rappoport alleges Montgomery, Harvey and the other defendants eventually used the ideas, techniques and images of Rappoport in infringing works. *See id.* at ¶¶ 51–61, 73–121.

The PCA Defendants seek to dismiss the claims asserted against them by Rappoport for lack of personal jurisdiction. In the alternative, the PCA Defendants have moved to transfer the claims against them to the District of Oregon. As mentioned in connection with the TCI Motion to Dismiss/Transfer, a district court may transfer an action to another district court even if it lacks jurisdiction over a defendant. *See Goldlawr,* 369 U.S. at 465–466, 82 S.Ct. 913; *Carteret,* 919 F.2d at 231; *Berkowitz,* 328 F.2d at 361; *Telesis,* 918 F.Supp. at 829. Accordingly, because the "interests of justice" dictate that transfer is appropriate, the portion of the PCA Defendants Motion to Dismiss/Transfer that seeks the dismissal of the claims will not be addressed. Instead, the claims against the PCA Defendants will be severed and transferred to the District of Oregon.

The PCA Defendants all reside in Oregon. *See* Skelton Aff. at ¶ 2. More importantly, Portland Cable is located in Portland and is the very enterprise Rappoport alleges was infiltrated in violation of RICO. *See* Amended Complaint at ¶¶ 67, 200–14. A substantial portion of the events giving rise to the claims against the PCA Defendants occurred in Oregon. As mentioned, in the Rappoport Moving Brief Rappoport argues:

> Based on the allegations in the plaintiff's amended complaint, the majority of acts taken against the plaintiff occurred in Oregon.

Rappoport Moving Brief at 1; *see* Rappoport Moving Brief at 4, 9. 11. Rappoport also contends: "The weight of acts is far greater on the ground in Oregon than in New Jersey or New York", *id.* at 7, and "[n]o other District has an interest in resolving this dispute that can even begin to compare with that of the District of Oregon." *Id.* at 2. The Amended Complaint also sets forth, for approximately five pages, the "wrongful and unfair conduct" that occurred in Portland, Oregon. *See* Amended Complaint at p. 9–13. The District of Oregon is a district in which the action could have been brought against

the PCA Defendants in accordance with § 1391(b).

It appears all necessary witnesses and documents related to the claims by Rappoport against the PCA Defendants are located in Oregon. The private interests of the parties tip strongly in favor of transfer to the District of Oregon.

The public factors also tip heavily toward the District of Oregon. The District of Oregon and its citizens have an interest in ensuring that Portland Cable and its employees act in accordance with its law. *See Kultur, Int'l v. Covent Garden Pioneer,* 860 F.Supp. 1055, 1068 (1994). This public interest is heightened by the allegations by Rappoport that the City of Portland is liable for it's involvement with Portland Cable. *See* Amended Complaint at ¶¶ 125–28. Finally, because Portland Cable is the location where some of the alleged misappropriation took place, there may well be a need for the jury to view these premises. *Cf. Ricoh,* 817 F.Supp. at 480 (noting importance of "the possibility of a jury view of the premises" when considering a motion to transfer under 28 U.S.C. § 1404).

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against the PCA Defendants are severed and transferred to the District of Oregon.

c. *The City of Portland Motion to Dismiss/Transfer*

█ The City of Portland seeks to dismiss the claims asserted against it for lack of personal jurisdiction. In the alternative, the City of Portland has moved to transfer the claims asserted against it to the District of Oregon.

As mentioned, a district court may transfer an action to another district court even if it lacks jurisdiction over a defendant. *See Goldlawr,* 369 U.S. at 465–466, 82 S.Ct. 913; *Carteret,* 919 F.2d at 231; *Berkowitz,* 328 F.2d at 361; *Telesis,* 918 F.Supp. at 829. Because the "interests of justice" dictate that transfer is appropriate, the portion of the City of Portland Motion to Dismiss/Transfer that seeks dismissal of the claims against it will not be addressed. Instead, the claims against the City of Portland will be severed and transferred to the District of Oregon.

The City of Portland is subject to jurisdiction in Oregon. In addition, a substantial portion of the alleged events giving rise to the claims by Rappoport occurred in Oregon. As mentioned, in the Rappoport Moving Brief Rappoport argues:

Based on the allegations in the plaintiff's amended complaint, the majority of acts taken against the plaintiff occurred in Oregon.

Rappoport Moving Brief at 1; *see* Rappoport Moving Brief at 4, 9. 11. Rappoport also contends: "The weight of acts is far greater on the ground in Oregon than in New Jersey or New York", *id.* at 7, and "[n]o other District has an interest in resolving this dispute that can even begin to compare with that of the District of Oregon." *Id.* at 2. The Amended Complaint also sets forth, for approximately five pages, the "wrongful and unfair conduct" that occurred in Portland, Oregon. *See* Amended Complaint at p. 9–13. Accordingly, the District of Oregon is a district in which the claims against the City of Portland could have been litigated pursuant to § 1391(b).

It appears all necessary witnesses and documents related to the claims by Rappoport against the City of Portland are located in Oregon. The private interests of the parties tip strongly in favor of transfer to the District of Oregon. In addition, the public interest factors also support the transfer of the claims against the City of Portland to the District of Oregon for the same reasons discussed in connection with the PCA Defendants Motion to Dismiss/Transfer.

Based on the foregoing, the convenience of the parties and witnesses and the interests of justice will be served if the claims against the City of Portland are severed and transferred to the District of Oregon.

6. *The Motions to Dismiss by Spielberg, Montgomery, Harvey and Hanna–Barbera*

Spielberg, Montgomery, Harvey and Hanna–Barbera have all moved to dismiss the

claims against them on the ground that they are not subject to personal jurisdiction in New Jersey.[36] *See* Marks Certif. II; Montgomery Certif.; Hope Certif.; Magnuson–Carson Certif. Rappoport has offered nothing to contradict these assertions. Unlike the other defendants, Spielberg, Montgomery, Harvey and Hanna–Barbera have not moved, in the alternative, to sever and transfer the claims asserted against them to another district.[37]

■■■■■ Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, a court may exercise personal jurisdiction over out-of-state defendants to the extent authorized by the long-arm statute of New Jersey. *See* Fed.R.Civ.P. 4(e); *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). That statute "permits the assertion of *in personam* jurisdiction as far as is constitutionally permissible under the Fourteenth Amendment." *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F.Supp. 1195, 1207 (D.N.J.1993). Under the Fourteenth Amendment, the exercise of jurisdiction over Spielberg, Montgomery, Harvey and Hanna–Barbera—all of whom reside out-of-state (*see* Marks II Certif.; Montgomery Certif.; Hope Certif.; Magnuson–Carson Certif.)—would be proper only if they had sufficient minimum contacts with New Jersey, such that requiring them to defend this lawsuit in New Jersey would not offend traditional notions of fair play and substantial justice. *See, e.g. Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Database Am.,* 825 F.Supp. at 1207–08. Plaintiff bears the burden of establishing those contacts. *Database Am.* 825 F.Supp. at 1207.

■■■ The contacts of a defendant with a forum may give rise to either general or specific jurisdiction. In either case, the minimum contacts necessary to confer jurisdiction only exist when a defendant's " 'conduct and connection with the forum State [is] such that [it] should reasonably anticipate being haled into court there.' " *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). To give rise to jurisdiction in this case, the purposeful contacts of Spielberg, Montgomery, Harvey and Hanna–Barbera with New Jersey must establish they availed themselves the privilege of conducting activities in New Jersey, "thereby invoking the benefits and protections of its laws." *See Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174, citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■■■ General jurisdiction exists where the contacts of a defendant with the forum are continuous and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Gehling v. St. George's Sch. of Med., Inc.,* 773 F.2d 539, 541 (3d Cir.1985) (general jurisdiction requires "continuous and substantial forum affiliations"). Substantially more than mere minimum contacts are required to establish general jurisdiction. *See Giangola v. Walt Disney World Co.,* 753 F.Supp. 148, 154 (D.N.J.1990) (citing *Provident National Bank v. California Federal Savings & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987)).

■■■ Specific jurisdiction exists when the litigation arises from the forum-related activities of a defendant. *See Database Am.,* 825 F.Supp. at 1212 (citing *North Penn Gas,* 897 F.2d at 690). To determine whether specific jurisdiction exists, the Court examines "the

---

**36.** As mentioned, Spielberg also moved to dismiss the claims asserted against him based upon insufficiency of service. Because the claims asserted against him are dismissed based upon lack of personal jurisdiction, the court need not address this alternative ground for dismissal.

**37.** Because Spielberg, Montgomery, Harvey and Hanna–Barbera did not move, in the alternative, to sever and transfer the claims asserted against them to another district, Rappoport was on notice that his claims against these defendants would be dismissed if he did not oppose their motions.

relationship among the defendant, the forum and the litigation." *Id.*

■ Rappoport has offered nothing to suggest Spielberg, Montgomery, Harvey and Hanna–Barbera are subject to either general or specific jurisdiction in New Jersey. In addition, the affidavits submitted by Spielberg, Montgomery, Harvey and Hanna–Barbera are similarly lacking in information necessary to determine whether they are subject to jurisdiction in the other fora to which claims are being transferred. *See* Marks II Certif.; Montgomery Certif.; Hope Certif.; Magnuson–Carson Certif. Accordingly, the motions to dismiss by these defendants are granted.

### 7. *The Claims Against Ovitz, Kirschner, Texaco and Kellogg*

Ovitz, Kirschner and Kellogg [38] did not file motions to dismiss and/or to transfer the claims asserted against them by Rappoport. In addition, they did not file opposition to the Rappoport Motion to Transfer. As such, the claims against them will be severed and transferred to the District of Oregon.

### Conclusion

For the foregoing reasons:

1. the Rappoport Motion to Transfer is granted in part and denied in part;

2. the Movie Defendants Motion to Transfer is granted; the claims against the Movie Defendants are severed and transferred to the Southern District of New York;

3. the CBS/Hill Motion to Transfer is granted; the claims against CBS and Hill are severed and transferred to the Southern District of New York;

4. the Coca–Cola Motion to Transfer is granted; the claims against the Coca–Cola are severed and transferred to the Southern District of New York;

5. the Tropicana Motion to Transfer is granted; the claims against Tropicana are severed and transferred to the Southern District of New York;

6. the Star/Texaco Motion to Transfer is granted; the claims against Star and Texaco are severed and transferred to the Northern District of Georgia;

7. the Big Feats Motion to Transfer is granted; the claims against Big Feats are severed and transferred to the Northern District of Texas;

8. the TCI Motion to Dismiss/Transfer is granted in part and denied in part; the claims against TCI are severed and transferred to the Southern District of New York;

9. the PCA Defendants Motion to Dismiss/Transfer is granted in part and denied in part; the claims against the PCA Defendants are severed and transferred to the District of Oregon;

10. the City of Portland Motion to Dismiss/Transfer is granted in part and denied in part; the claims against the City of Portland are severed and transferred to the District of Oregon;

11. the Spielberg Motion to Dismiss is granted; the claims against Spielberg are dismissed without prejudice;

12. the Montgomery Motion to Dismiss is granted; the claims against Montgomery are dismissed without prejudice;

13. the Harvey Motion to Dismiss is granted; the claims against Harvey are dismissed without prejudice;

14. the Hanna–Barbera Motion to Dismiss is granted; the claims against Hanna–Barbera are dismissed without prejudice; and

15. the claims against Ovitz, Kirschner and Kellogg are severed and transferred to the District of Oregon.

In summary, the claims against Amblin, Universal, Warner Bros., Time Warner, Turner Pictures, TBS, the News Corp., Fox, Paramount, Viacom, ILM, Nabisco, Dow, Piz-

---

**38.** Kellogg has filed an answer to the Amended Complaint (the "Kellogg Answer"). In the Kellogg Answer, Kellogg did not assert affirmative defenses that venue is improper and that it is not subject to jurisdiction in this district. *See* Kellogg Answer at 3–5.

To date, Ovitz and Kirschner have not filed answers to the Amended Complaint even though it appears they were served with a summons.